OPINION OF THE COURT
Albert A. Blinder, J.
THE MOTIONS
Motion M-20793 is the claimant’s motion for an order pursuant to CPLR 3212 granting summary judgment on the grounds that no triable issue of fact exists. This contention is *901 premised upon the theory of collateral estoppel. The motion also seeks, in the alternative, leave to amend the claim to include a cause of action for indemnification. By Motion M-21011 the State moved for an order pursuant to CPLR 3212 dismissing the claim, directing the entry of judgment against the claimant upon the ground that there is no triable issue of fact and, in the alternative, for an order pursuant to CPLR 3025 (subd [b]); and 22 NYCRR 1200.17 permitting the defendant, the State of New York, leave to serve an amended answer to include the affirmative defenses of collateral estoppel and res judicata. Motion M-20429 is claimant’s motion for a further examination before trial. Motion M-20448 is the State’s cross motion for further examination before trial of the claimant.[1] All motions are consolidated for purposes of decision thereon.
The court will first direct its attention to the motion by claimant for summary judgment.
FACTS BEFORE THE COURT
Claimant’s position is premised on the entry of a judgment in the United States District Court for the Eastern District of New York against one Vincent Prajka in an action entitled "Dr. Cecil Duverney vs. Patrolman Vincent Prajka and Patrolman Thomas R. Strum”. Judgment for $950,000 in compensatory damages and $250,000 in punitive damages was entered in the clerk’s office on March 8, 1978. That action was brought under the Civil Rights Act. (US Code, tit 42, § 1983.)
In his affidavit presented to this court in support of his motion, Dr. Duverney alleges that on April 14, 1976 he visited with an old friend and patient who was seriously ill. He stated that he bought a bottle of vermouth to help his friend’s appetite and the two opened the bottle and drank three small drinks. At approximately 12:05 in the afternoon, Dr. Duverney took leave of his friend and left to return to his residence. As he proceeded, he took some medication he had neglected to take earlier and then drove on his way home.
As he was traveling east on the Southern State Parkway, he began to feel ill and feared, so he states, that he might be having a heart attack or a reaction to the medication. Deciding to proceed to a friend’s house so that they might call *902 medical help, he exited and re-entered the Southern State Parkway, westbound. He then noticed a State police car pull up alongside his vehicle with its red light flashing and sounding its siren. He stopped and was ordered out of the car.
An officer, later ascertained to be Thomas Strum, asked him whether he had been drinking. Dr. Duverney states that he replied that he had been drinking with a friend but that he was not drunk. Despite this statement, the officer took out handcuffs and told Dr. Duverney that he was going to take him in. After some discussion, the claimant allowed himself to be handcuffed.
A second police officer then arrived, Vincent Prajka. Prajka examined the claimant’s vehicle which had some damage on the passenger side. Claimant states that he was not aware of the damage and had had no accident. At this point Dr. Duverney states that Prajka addressed Strum asking "What do you have?” and Strum replied "I got me a nigger dude.” Dr. Duverney states that he made no comment on this racial remark. He was hoping to reason with the officer, explaining that he was sick and not drunk and requesting the removal of the handcuffs. Dr. Duverney was placed in the police car, handcuffed, with Strum driving and Prajka in the back seat. He continued requesting that the handcuffs be loosened as his hands were numb and extremely painful. The officers ignored the request.
Dr. Duverney deposed that Strum said "You niggers always cause alot [sic] of trouble.” Dr. Duverney claims that he ignored the comment and asked again that the handcuffs be loosened. Strum answered with another racial comment. At that point, Dr. Duverney states, "I then replied that you are nothing but gangsters in uniform, white animals, in fact, two white bastards.” After this, "Strum swung his arm back and struck me in my mouth, splitting my lip.” Strum pulled the car off the road and stopped at the police parking lot getting on his knees facing Dr. Duverney and started punching him with his fist, knocking his glasses off and injuring his eyes, face, ears, etc. Prajka joined in striking Dr. Duverney in his ears. Dr. Duverney states in his affidavit "[t]he blows were so severe and numerous that I blacked out.”
After this, Dr. Duverney recounted that Prajka went into the front seat of the car. The car started off and drove for about 10 to 15 minutes with Dr. Duverney alone in the back *903 seat. He stated that he called both police officers damned cowards for beating a handcuffed man. After he made that statement Prajka "turned, got on his knees and punched me on the left side of my face. The car was again stopped, and both officers punched me until I lost consciousness. The car then sped on to the Belmont Police Headquarters and came to a stop in the parking lot.” Because of the injuries sustained, the claimant was unable to leave the vehicle. "Strum grabbed me by the hair and yanked me out of the car, causing me to lose my balance. At that same time, Prajka struck me a very severe blow with a hard object at the back of my right ear.”
The three entered the headquarters building. Dr. Duverney was crying and protesting the type of treatment he had received. He made complaint to those present in the police station that he had been brutalized, with his hands handcuffed behind him. A Captain ordered that Dr. Duverney be taken to a hospital.
It is alleged that Dr. Duverney sustained serious injuires as a result of the assault. The claim alleges that the assault caused the claimant to be hospitalized and claimant sustained severe, diverse, serious and permanent damage to the external and internal organs of his body and his nervous system. It is alleged that Dr. Duverney continues to suffer pain and discomfort and and permanent injuries. Further allegations of anxiety and neurosis are set forth.[2]
THE PLEADINGS IN THE COURT OF CLAIMS
The claim in this court basically alleges three causes of action. The first is assault and battery for which compensatory damages of $2,000,000 and exemplary damages of $1,000,000 are sought. The second is wrongful, unlawful and malicious imprisonment. It also alleges that as a result the doctor was subjected to ridicule, scorn and derision by his imprisonment. It seeks $500,000 as compensatory damages and $500,000 as exemplary damages. The third, in addition to alleging false arrest, is for malicious prosecution. It seeks compensatory damages of $500,000 and exemplary damages of an additional $500,000. The total damages claimed are $5,000,000.
*904 POSITIONS OF THE ADVERSARIES
The court is advised by the affidavits submitted by both claimant and his attorney that all criminal charges brought against the claimant allegedly arising from these facts have been dismissed.
It is to be noted that, initially, the claimant herein and his wife, as plaintiffs, commenced an action in the United States District Court against not only Prajka and Strum, but other individuals as well, and against the Long Island State Parkway Police, County of Suffolk[3] and the State of New York. Pursuant to a motion to dismiss against certain defendants in the complaint made by an Assistant Attorney-General, prior to trial, Judge Weinstein ordered dismissal against the defendants, State of New York, Long Island State Parkway Police and Caption Henry Springer.[4]
The claimant’s able attorney, in requesting the court to find that no triable issue of fact exists and that the court employ the doctrine of collateral estoppel, refers to the Federal trial court’s charge to the jury,[5] in which, it is argued the court required the jury to make specific decisions on disputed areas of fact, as it found for the plaintiff. Claimant’s attorney also argues that the State of New York has never denied that the two alleged assailants were, at the time of the assault, State employees, acting within the course of their employment.[6]
The State also asks that the doctrine of collateral estoppel be employed in deciding the motions herein. It is asserted by the defendant that the issue litigated in the Federal court action established that Strum was not culpable since no verdict was returned against him. The verdict against Prajka was premised on a civil rights violation under section 1983 of title 42 of the United States Code. It is argued that such acts outside the scope of employment preclude vicarious liability against the employer. The defendant argues that mutuality of *905 estoppel is not a condition precedent to the offensive application of the doctrine of collateral estoppel. The application so invoked may be utilized without subjecting its proponent to similar use by the opposing party.
COLLATERAL ESTOPPEL
Collateral estoppel is a doctrine which has often been said to be a fundamental principle of jurisprudence. It applies when issues of fact have been previously decided in a former action and were judicially determined in such a manner that they may not again be litigated in a subsequent litigation. (See Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304; Zabriskie v Zoloto, 22 AD2d 620.) One of the leading cases in New York which sets forth the doctrine is Schwartz v Public Administrator (24 NY2d 65). The Court of Appeals therein adopted what is known as the "full and fair opportunity” test, stating (p 71): "New York law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.”
It is apparent that the previous requirements as to mutuality of estoppel and identity of parties have been laid to rest. (Kowalski v Mohsenin, 38 AD2d 274.) A recent decision, Read v Sacco (49 AD2d 471, 473-474), held (in a civil case in which the doctrine was sought to be applied after conviction in a criminal trial) that "in every case the question of fairness — an inherent element of due process — in the application of the doctrine must be the crowning consideration.” The court continued (p 474): "Fairness, for example, implies that the litigant in prior proceedings had full opportunity to contest the decision now invoked against him (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 71). In testing the fairness of the earlier litigation, the presence of counsel in behalf of the losing party, the regularity of the procedures (cf. Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan L Rev 281, 316, 321), the adequacy of those procedures in the particular case and the limits of the jurisdiction in the first court are all significant and helpful guides. In fine, collateral estoppel should not be blindly applied to multiple litigation on the basis of a rigid rule; each *906 case must be examined to determine whether, under all the circumstances, the party said to be estopped was not unfairly or prejudicially treated in the litigation in which the judgment sought to be enforced was rendered.”
Thus, it is apparent that for the doctrine of collateral estoppel to be applicable to the instant motion, (1) this court must find that there be identity of issue which has necessarily been decided in the prior action and (2) that there must have been a full and fair opportunity to contest that decision. While the Read case was an attempt to use a criminal conviction as a basis for collateral estoppel, it does point out that collateral estoppel must be applied only after careful examination to determine whether the parties said to be estopped had full opportunity to contest the decision now invoked against them. In testing the fairness of the earlier litigation, all circumstances must be evaluated. This requires an exploration of the various elements which make up the realities of litigation. Furthermore, it has been stated that: " 'A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availablity of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.’ ” (Randolph v Nurse, 49 AD2d 354, 356, quoting Schwartz v Public Adminstrator, 24 NY2d 65, 72, supra.)
COLLATERAL ESTOPPEL IN THE COURT OF CLAIMS
There is an inherent difficulty in finding collateral estoppel applicable in this court. For one, the State of New York has waived its immunity from liability by virtue of section 8 of the Court of Claims Act, and only consistent with the procedure set forth therein. Pursuant to subdivision 3 of section 12 of the Court of Claims Act decisions on claims against the State (and judgments entered thereon) are rendered only by a Judge or Judges of the Court of Claims.[7] To employ collateral estoppel in the case at bar, would be, in effect, to enable a claimant to obtain a trial by jury in derogation of the Court of Claims *907 Act. There are good and cogent reasons for the defendants’ insistence on strict application of the Court of Claims Act, which is a precondition for the sovereign’s waiver of immunity. Certainly the converse would be true. The State has not been allowed to use a prior Court of Claims judgment for collateral estoppel in the Supreme Court against a party who had a constitutional right to trial by jury.[8] (See People v Delaware & Hudson R. R. Corp., 42 AD2d 618 [citing Horoch v State of New York, 286 App Div 303, mod on other grounds 286 App Div 977; Clark v Fidelity & Cas. Co. of N. Y., 55 Misc 2d 327; Patti v State of New York, 47 Misc 2d 622].) What effect State of New York v County of Sullivan (54 AD2d 29, revd on other grounds 43 NY2d 815), has on this doctrine is not yet apparent.
Although the right to trial by jury is constitutionally guaranteed (NY Const, art I, § 2), the permission to sue the State of New York does not carry with it the same right. Any seeming contradiction has been resolved by the courts in holding that the right to sue the State is a privilege, subjected to conditions. (Matter of Tierney v State of New York, 55 AD2d 158, 162.)[9]
However, it is not necessary to determine these motions solely on this rather anomalous legal proposition.
A COMPARISON OF THE CLAIM IN THE COURT OF CLAIMS AND THE FEDERAL ACTION
It is important for the Schwartz test (Schwartz v Public Administrator, 24 NY2d 65, supra) to examine the differences between the claim filed in this court and the complaint and trial in the Federal court.
In charging the jury, Judge Weinstein stated that "the essence of plaintiff’s claim is that the defendants have deprived him of his constitutional right not to be denied liberty withut due process of law and that this deprivation caused him monetary damage.” The jury was also charged that the plaintiff had to establish the following four propositions:
*908 "First: That a defendant knowingly and unlawfully arrested and detained, and imposed corporal punishment, physical punishment upon him, by beating, bruising and wounding him about the head and body and by maliciously prosecuting him.
"Second: That a defendant acted under color of state law.
"Third: That the acts and conduct of a defendant, of which the plaintiff complains, were knowingly done in such a manner or under such circumstances as to deprive him of his Federal Constitutional rights not to be denied or deprived of his liberty without due process of law.
"Fourth: That a defendant’s acts and conduct so done were the proximate cause of injury and consequent damage to the plaintiff.”
The court charged the jury that Dr. Duverney claimed a right to recover under section 1983 of title 42 of the United States Code and read the statute to the jury.
It is well established that the basic requirements of a complaint under section 1983 of title 42 of the United States Code are (1) that the conduct complained of was engaged in under color of State law, and (2) that such conduct subjected the plaintiff to a deprivation of rights, privileges or immunities secured by the Federal Constitution and laws. (Jones v Hopper, 410 F2d 1323, cert den 397 US 991.)[10] It has been held that the Federal remedy under the Civil Rights Act is supplementary to any State remedy and the latter need not be first sought and refused before the Federal remedy is invoked. (Monroe v Pape, 365 US 167, 183, supra.)
It is unnecessary now to specifically set forth a definition of what is necessary to hold the State liable under the causes of action alleged in the claim filed in this court. However, it can be seen that there are substantial and fundamental differences in those torts as compared to the cause of action brought under section 1983 of title 42 of the United States Code.[11]
*909 THE CIVIL RIGHTS ACTION AS AN ESTOPPEL
It is interesting to note that the use of collateral estoppel in a civil rights case brought in a Federal District Court would not appear to be sanctioned. It is stated that the existence of any reasonable doubt as to what was decided by a prior judgment will be resolved against using the prior judgment as an estoppel. (Kauffman v Moss, 420 F2d 1270; Mulligan v Schlachter, 389 F2d 231; Nieves v New York City Tr. Auth., 91 Misc 2d 214, supra; Antieau, Federal Civil Rights Acts, § 83, p 110.)
Besides the inherent differences between the civil rights cause of action in the Federal court and the causes of action set forth in the claim filed in the Court of Claims against the State of New York, there is another factor which casts a shadow upon the use of the doctrine of collateral estoppel, the inconsistent verdict of the jury. The affidavit submitted in support of the motion in this court clearly alleges wrongs committed by both Prajka and Strum. Nevertheless, the jury found only against Prajka. It is impossible to ascertain why the jury so found.[12]
THE OPPORTUNITY TO CONTEST THE DECISION
Even if the necessary identity of issue had been present in the prior Federal action and it was decisive, the Attorney-General submits that there was not a full and clear opportunity to contest the decision which is now said to be controlling. (See Schwartz v Public Administrator, 24 NY2d 65, 71, supra.) After the dismissal of the action against the State and its agency by Judge Weinstein, which was proper, the State *910 withdrew from the action and would not represent either Prajka or Strum.
Claimant maintains that the State initially appeared, not only for itself, but for the individual officers, as well. Claimant submits that notwithstanding the fact that the Attorney-General withdrew from the defense of the two officers in the action, the State still had the opportunity to continue its appearance by virtue of section 17 of the Public Officers Law.[13]
Case law has established that where a person had the right to control the conduct of the litigation on appeal from the judgment, he could be estopped from relitigating the issues, even though he was not a party or privy to the prior suit. (Fish v Vanderlip, 218 NY 29; Willsey v Strawway, 44 Misc 2d 601, 605.) However, this doctrine only operates against those who will be directly responsible, vicariously or by agreement, should judgment go against the party defendant. (Hartford Acc. & Ind. Co. v First Nat. Bank Sc Trust Co., 281 NY 162, 167-168.) The court does not believe that the Attorney-General under the circumstances had a full and fair opportunity to contest the verdict in the Federal court within the Schwartz guidelines.
APPLICATION OF THE DOCTRINE WHEN AN APPEAL IS PENDING
There is very little authority dealing with a collateral estoppel situation when an appeal is pending from the judgment which is its basis. Apparently, the established rule in New York is that the pendency of an appeal does not affect the judgment’s use as an estoppel. (Sullivan v Ringler Sc Co., 69 App Div 388; see, also, 9 Carmody-Wait NY Prac 2d, § 63:215.) The judgment in the Federal District Court is at present being appealed by Prajka. However, there are many other jurisdictions which would preclude the application of the *911 estoppel doctrine when an appeal is pending. (See Ann., 9 ALR2d 984.)
Our research has disclosed no recent New York cases dealing with the subject. Nevertheless, the full and fairness opportunity doctrine of Schwartz v Public Administrator (24 NY2d 65, supra), mandates consideration of the existence of an appeal. It is but one of the factors so considered.
THE ELEVENTH AMENDMENT
Although not briefed,[14] there apppear to be other more weighty grounds for not automatically sanctioning a Federal jury determination as collateral estoppel in the Court of Claims. These all flow from what could be construed as the inflexibility of the Eleventh Amendment to the United States Constitution. It provides: "The Judicial power of the United States shall not be contrued to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.”[15]
It is clear that the Eleventh Amendment bars Federal courts from ordering States as defendants to give monetary relief or to enter judgments for money damages.[16] It has been stated that the United States Supreme Court in deciding Eleventh Amendment cases has focused not on its language but on the concept of sovereign immunity, of which it is a reminder and exemplification. (Tribe, American Constitutional Law, § 3-35.) This principle finds support in Matter of New York (256 US 490). The Matter of New York case was an application for a writ of prohibition to prevent a Court of Admiralty from assuming jurisdiction over a State officer. The Supreme Court held that the decree sought would affect the named individual in his official capacity and would be satisfied out of the property of the State of New York in the individual’s hand, as Superintendent of Public Works. As such, it would be a charge upon the treasury of the State, under New York’s Canal Law. The court stated that (p 502): "In either *912 case their effect, whether complete or not, would expend itself upon the People of the State of New York in their public and corporate capacity. Section 47 of the Canal Law provides for an action before the court of claims for certain kinds of damages arising from the use or management of the canals; but in terms it is provided that this 'shall not extend to claims arising from damages resulting from the navigation of the canals.’ There is no suggestion that the Superintendent was or is acting under color of an unconstitutional law, or otherwise than in the due course of his duty under the Constitution and laws of the State of New York. In the fullest sense, therefore, the proceedings are shown by the entire record to be in their nature and effect suits brought by individuals against the State of New York, and therefore — since no consent has been given — beyond the jurisdiction of the courts of the United States.”
THE ELEVENTH AMENDMENT AND CIVIL RIGHTS ACTIONS
In litigation brought under the Civil Rights Act in which damages are sought, it is well established that the Eleventh Amendment bars suits not only against the State, when it is named a party, but also when it is the party in fact. (Edelman v Jordan, 415 US 651; Poindexter v Greenhow, 114 US 270, 287; Cunningham v Macon & Brunswick R. R. Co., 109 US 446.) The Eleventh Amendment’s applicability "is to be determined not by the mere names of the titular parties, but by the essential nature and effect of the proceeding, as it appears from the entire record.” (Matter of New York, 256 US 490, 500, supra.) This is not to say that a State officer acting under a State law in a manner violative of the Federal Constitution may not be subject to provisions of the Civil Rights Act. Case law has employed the fiction of subjecting him, in his personal capacity, to the consequences of his individual conduct and the State has no power to impart its immunity to thwart the supreme authority of the United States (Matter of Young, 209 US 123, 159-160, supra; Tribe, American Constitutional Law, § 3-38). Similarly, it has been stated that there is no avenue of escape from the paramount authority of the Federal Constitution when there is a substantial showing that the exertion of State power has overridden private rights secured by the Constitution. (Sterling v Constantin, 287 US 378, 397-398; also, see, Scheuer v Rhodes, 416 US 232.)
The Scheuer case is often cited as authority for the proposi *913 tion that where the State is not named as a party and the pleadings reveal that the claim against a named State officer is to impose personal liability, the Eleventh Amendment is not a bar to the assertion of the claim. (Brody v Leamy, 90 Misc 2d 1, 23-24.) The confrontation with the Eleventh Amendment may therefore be avoided by framing an order imposing personal liability only. (Thonen v Jenkins, 517 F2d 3; Collins v Schoonfield, 363 F Supp 1152.) Nevertheless, it is the end result which in this court’s mind is critical. Edelman v Jordan (415 US 651, supra) clearly states that a suit by private parties seeking to impose a liability which must be paid from public funds in the State treasury is barred by the Eleventh Amendment. Claimant’s argument that the State must pay the Prajka judgment apparently puts this within the Edelman doctrine.
As was mentioned above, Judge Weinstein, in dismissing the action against the Long Island State Parkway Police, based his decision on Monell v Department of Social Servs. (532 F2d 259, supra).[17] The reason given should have been the Eleventh Amendment. Judge Weinstein was apparently under the mistaken belief that the Long Island State Parkway Police was a local government unit. It is rather a misnomer for a State agency. In any event, the Supreme Court reversed the Second Circuit’s decision in Monell.[18]
In reversing Monell, the Supreme Court held that Congress did intend municipalities and other local government units to be included among those persons to whom section 1983 of the Civil Rights Act applies. It stated: "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is allged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body’s officers.” (Monell v New York City Dept. of Social Servs., 436 US 658, 690.)
However, in analyzing the language of section 1983 the court further stated that while the language imposes liability *914 on a local government unit that, under color of some official policy, "causes” an employee to violate another’s constitutional rights, it "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.” (Monell v New York City Dept. of Social Servs., 436 US 658.) Mr. Justice Brennan specifically stated (p 694): "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government’s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.” Clearly by this language even a local government is spared vicarious liability solely on the basis of an employer-employee relationship with a tort-feasor.[19]
For all of the foregoing reasons, the court finds that collateral estoppel by the claimant may not be employed and denies the claimant’s motion for summary judgment.
THE OFFENSIVE USE OF COLLATERAL ESTOPPEL
The defendant has also requested the court to use the doctrine of collateral estoppel stating that the State’s liability, if any, in the claim in this court is founded upon the acts of employees Prajka and Strum.
The State further contends that Strum was completely vindicated and the jury found no negligence on his part. Therefore, it is submitted the State cannot be held liable for his conduct. Prajka, on the other hand, was found liable for both punitive and compensatory damages and this liability, since it is premised on violation of the Civil Rights Act, must have meant that he acted outside the scope of his employment. Therefore, vicarious liability cannot lie against his employer, the State of New York. The State would use the doctrine of collateral estoppel offensively as a sword, while at the same time taking the position that the doctrine could not be used against it. This intriguing position is not without some basis in the law. Mutuality of estoppel is indeed a dead letter *915 in New York and a defendant can use collateral estoppel offensively without being subjected to its similar use by the opposing party. (B. R. De Witt, Inc. v Hall, 19 NY2d 141; Albero v State of New York, 31 AD2d 694, affd 26 NY2d 630.) The defendant contends that the jury’s verdict shows that Prajka acted maliciously against the claimant because of his race and the award of punitive damages established his "vicious”, "wanton” and "oppressive” conduct. (Charge of Judge Weinstein to the jury.) The Public Officers Law (then effective)[20] did not include within its protective ambit, actions which resulted from the willful and wrongful acts of gross negligence of officers or employees. Furthermore, as was stated above, liability in a civil rights action is against the individual public official alone and does not vicariously lie against his employer under the doctrine of respondeat superior. (Monell v New York City Dept. of Social Servs., 436 US 658, supra.)
Were it not for the substantial differences between the Civil Rights Act and the elements of the cause of action alleged in the claim, this court would be inclined to agree with the State and dismiss the claim. Certainly the finding of punitive damages provides a very persuasive reason for dismissal. There are various authorities that hold that punitive damages may not be awarded against the State or a municipal corporation. (Costich v City of Rochester, 68 App Div 623, 631-632; McCandless v State of New York, 6 Misc 2d 391, 395, mod on other grounds 3 AD2d 600, affd 4 NY2d 797.) However, there are authorities which hold the other way. See the cases cited in Hayes v State of New York (80 Misc 2d 498, 503, et seq., revd on other grounds 50 AD2d 693, affd 40 NY2d 1044). There appears to be no distinct statement on the issue and it is usually dealt with by a determination that there is a lack of proof warranting an award of punitive damages against the State. (See, for example, Lochhaas v State of New York, 64 AD2d 816; Snyder v State of New York, 20 AD2d 827.)[21]
*916 The application of respondeat superior will depend on the facts. The facts must be presented in a plenary trial based on the claim which again asserts causes of action, the elements of which are substantially different from those proven in the Federal forum. It is the court’s opinion that the actions of the State’s employees or employee may have been excessive and as such sufficient to fasten liability upon the State. (Jones v State of New York, 33 NY2d 275, 280.) Accordingly, the defendant’s motion for summary judgment is likewise denied.
Claimant’s Motion M-20793, in addition to seeking summary judgment, sought, in the alternative, leave to amend the claim to include a cause of action for indemnification. The latter portion of that motion is also denied. However, it is without prejudice to renewal upon proper papers since it is not at all Set forth in the supporting papers annexed to the notice of motion before the court.
Defendant’s Motion M-21011 sought in addition to an order dismissing the claim, in the alternative, leave to serve an amended answer to include the affirmative defenses of collateral estoppel and res judicata. That portion of the motion is granted and the defendant shall file an amended answer in the form annexed to the motion papers and otherwise comply with the rules of this court. Claimant’s Motion M-20429 sought an order directing further examination before trial of Strum and Prajka and a direction to the officers to answer certain questions. Similarly, the State moved by Motion M-20448 for an order directing a further examination before trial of the claimant directing him to answer certain questions which were reserved for rulings in his previous depositon. Since the submission of the motions, both sides have written the court withdrawing most of the objections. Therefore, the court will sign an order directing further examination before trial by both sides.

. Motion M-20554 was claimant’s motion for an in camera inspection of personnel records of the Long Island State Parkway and was withdrawn.

. Submitted as exhibits to the motion papers are medical reports by various physicians attesting to the physical injuries sustained by the claimant and photographs of the claimant which were taken shortly after the assault.

. It is not clear from the papers submitted as to what occurred with respect to the action against this defendant, but it appears to have been dismissed.

. The motion transcript relating to the dismissal was submitted to the court. It is clear that Judge Weinstein based his decision to dismiss as against the Long Island State Parkway Police on the Second Circuit’s decision of Monell v Department of Social Servs. (532 F2d 259.) The Monell decision was reversed by the Supreme Court and will be discussed in detail at a later point in this decision.

. A copy of which has been submitted to the court.

. This had been judicially admitted by defendant in its answer to the claim at bar. However, Motion M-21011 seeks leave to amend.

. The Constitution provides that the Legislature may provide for the manner of trial of actions and proceedings involving claims against the State. (NY Const,, art VI, § 18, subd b.) And as afore-mentioned, the Legislature, by enacting section 12, provided only for the trial of claims against the State by a Judge or Judges.

. We note that a prior adverse adjudication in the Court of Claims may be used against the party in subsequent actions by others, but if he wins in the Court of Claims he cannot use the victory. (See Albero v State of New York, 26 NY2d 630; Hires v New York Cent. R. R., 24 AD2d 1075. In general see Siegel, New York Practice, § 470.)

. Cf. Mayle v Pennsylvania Dept. of Highways, 479 Pa 384; Greenfield v Vesella, 457 F Supp 316.

. It has been stated that section 1983 finds its origin in section 2 of the Civil Rights Act of 1866 (14 Stat 27). (Lynch v Household Fin. Corp., 405 US 538.) The law was the third of five civil rights acts enacted by the reconstruction Congress during the period 1866-1875 and has been called the "Third Enforcement Act” and also the Klu Klux Act, but is commonly known as the Civil Rights Act of 1871. (Antieau, Federal Civil Rights Act, § 29; see, also, Monroe v Pape, 365 US 167; Zwickler v Koota, 389 US 241.)

. In the recent case of Nieves v New York City Tr. Auth. (91 Misc 2d 214, 216) it was held:
"The supplementary and broad public right to relief under the Civil Rights Act must be considered distinct from any existing rights arising out of the common law. *909 'The same set of facts may give rise to violations of both federal statute and the state common law, but the rights are not necessarily coterminous and the essential criteria are not necessarily the same.’ (Martin v Duffie, 463 F2d 464, 467 [emphasis in original].)
"Furthermore, the elements of proof required in a common-law action for assault, false imprisonment and false arrest differ greatly from the proof required in a case arising out of the Civil Rights Act. For example, proof of intent to commit a violation of the Civil Rights Act is not required, while proof of intent is required to make out the tort actions (see Restatement, Torts 2d, § 8A; § 21, subd [1], par [a]; § 35, subd [1], par [a]).”

. It is interesting to conjecture what would happen if the State decided to defend Strum in the Federal action and Prajka proceeded with his own counsel. Query, since the jury did not find against Strum, would the State be absolved from any liability? This was posed, arguendo, at oral argument by the court and not satisfactorily resolved.

. The defendant withdrew from the action based on the existence of a conflict of interest between the codefendants themselves and between the codefendants and the State of New York. In fact, upon the Attorney-General’s withdrawal from the action, Prajka and Strum commenced an article 78 proceeding to have the Supreme Court in Albany County order the Attorney-General and the State of New York to represent them in the Federal action and to assume their cost of legal representation. By decision dated July 5, 1977, Mr. Justice Cobb dismissed the article 78 proceeding holding, inter alia, that the then effective section of the Public Officers Law used the discretionary word "may”. He also held that the Attorney-General’s position regarding the conflict of interest of the two officers was a correct position.

. But alluded to in oral argument.

. The Eleventh Amendment applies to suit brought against the State by one of its own citizens, as well as to a suit brought by a citizen of another State. (Hans v Louisiana, 134 US 1.)

. The amendment, however, does not ordinarily prevent Federal courts from requiring States, through their officers, to comply with Federal injunctions. (See Matter of Young, 209 US 123.)

. Claimant’s counsel in his affirmation and also repeatedly in his memorandum of law contended that Judge Weinstein’s dismissal of the State Parkway Police and the State of New York was in error in that the Parkway Police and the State were proper parties in the Federal court action. This is incorrect, as a matter of law, as the Eleventh Amendment specifically bars the State or a State agency from being a party defendant in that action.

. The Second Circuit, in its decision, had followed Monroe v Pape (365 US 167, supra).

. Justice Brennan was careful to note in the Monell decision that it would not in any way affect an Eleventh Amendment bar to an action against the State. He stated "[o]ur holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes.” (Monell v New York City Dept. of Social Servs., 436 US 658, at p 690, n 54.)

. Recently section 17 of the Public Officers Law was extensively amended by chapter 466 of the Laws of 1978 and became effective September 4, 1978. The new statute similarly provides that "the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.” (L 1978, ch 466, subd 3, par [a].) Thus there is no substantial change in the statute with respect to intentional tort.

. It should be noted that the claimant, on oral argument, withdrew his application for summary judgment based on the punitive damages found in the Federal court.