OPINION OF THE COURT
Thomas J. Lowery, J.
On November 18, 1974, the State appropriated 87.82+ acres of land, together with improvements, situated in the Town of Lake Pleasant, Hamilton County and within the Adirondack Park.[1] It comprised the easterly portion of Lot No. 24, Township 2 of the Totten and Crossfield’s Purchase.[2] The appropriation map divided the property into two parcels, "A”, containing .56 acres, and "B”, containing 87.26 acres.
TITLE ISSUE
This proceeding is the culmination of many years of dispute with respect to the ownership of the subject property. Initially, the State argues that the claimants have failed to establish their title to the property taken. In order to resolve this issue, an examination of the history of the title to Lot No. 24 is necessary.
The evidence establishes that there is an unbroken chain of title to all of Lot No. 24 from the date letters patent were issued in 1786 to 1797, when title vested in William Spier. Thereafter, record title to the westerly 100+ acres, not the subject of this proceeding, is clear. Through mesne convey *985 anees, title to this parcel vested in the State of New York in 1901. Although there is no record that William Spier, or his heirs, ever conveyed the disputed easterly portion of Lot No. 24, the State asserts that it became the owner of this parcel through various alleged tax sales.
In 1923 William Demarest and his wife Cora B. Demarest occupied the southerly portion of Lot No. 24, including a portion of the disputed property. This occupation was under the mistaken belief that the land was part of a 50-acre conveyance, which in fact lay wholly in Lot No. 12. A cabin was constructed on a portion of the occupied property that is designated in this proceeding as parcel "A”. This portion ultimately came into the possession of Joseph Peasley, the claimant John J. Peasley’s father.
In 1942, the State commenced an action in ejectment against Cora B. Demarest[3] and Joseph Peasley. The subject matter of this action was 8.445 acres of Lot No. 24, of which 7.885 acres was situated in the westerly portion of the lot. The remaining .56 acres (parcel "A”), containing the Peasley cabin, was situated in the disputed easterly portion. It should be noted that there is no evidence that the easterly portion of Lot No. 24 was divided into separate parcels prior to 1942. The designation of parcels "A” and "B” in this proceeding was apparently based upon the arbitrary northern limit of the ejectment action.
In the 1942 ejectment action, the State relied on a tax sale conducted in 1843 and, in addition, sought to support its claim to the westerly 100 acres by an independent chain of title from William Spier. Tax sales for the years 1900 and 1905 were introduced into evidence as well.
Judgment was granted in favor of the State for the 7.885 acres in the westerly portion of Lot No. 24. The complaint was dismissed with respect to the .56 acres (parcel "A”) in the easterly portion of the lot. The dismissal was solely predicated on the finding that the State had no title to any portion of the 87.82+ acres that is the subject matter of this proceeding.
In 1974 the claimants commenced an action, pursuant to article 15 of the Real Property Actions and Proceedings Law, against all persons known and unknown who may have derived their interest from or through William Spier. The action *986 sought a judgment determining the title to the disputed easterly portion of Lot No. 24. The action was founded on adverse possession by written instrument. Reliance was placed on two deeds. The first was a conveyance in 1942 from Cora Demarest to Joseph Peasley and the second was a conveyance in 1961 from Blanche Peasley, devisee of Joseph Peasley, to the claimant, John Peasley.[4]
Although the summons in the 1974 action did not specifically designate the State as a defendant, a copy of the summons, along with a copy of the complaint, was personally served upon the Attorney-General. The complaint set forth that the State had no interest in the property by reason of the 1942 judgment and that the State was being served in order that it might represent the interest of unknown defendants. In response to the service, the State filed a standard notice of appearance. It did not, however, subsequently participate in the action. Rather, a stipulation was entered into wherein it was provided that any person who was adjudicated to be the owner of the property would pay the transfer tax. Thereafter, judgment[5] was granted declaring John Peasley to be the owner in fee of the entire 87.82 acres, with Blanche Peasley being declared as having a life use in the camp occupied by her.
The State, upon being served with a copy of the judgment, neither appealed nor sought to have the judgment vacated. Instead, the State appropriated the property.
Fundamental to the resolution of the title to the disputed parcel is the effect of the 1974 judgment. The claimants seek to assert this judgment as a muniment of their title, thus establishing an unbroken chain to the disputed parcel from William Spier, or his heirs, through the judgment to themselves. The State argues that the 1974 judgment is in no way binding on them, since it was neither a party nor privy to a party in the action.
It is the general rule that the doctrine of res judicata is *987 applicable only to parties or their privies in the previous action. (Gramatan Home Investors Corp. v Lopez, 46 NY2d 481; Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.) It is a well-settled exception, however, that a judgment is admissible to prove the rights or relations established between the parties to the first action. (Railroad Equip. Co. v Blair, 145 NY 607.) Therefore, as between William Spier, or his heirs, and the claimants, the 1974 judgment may be used as a muniment of title. (Greenleaf v Brooklyn, Flatbush & Coney Is. R.R. Co., 132 NY 408.) The 1974 judgment, however, may not be used to divest a right or interest of a person, not a party or privy thereto. (Railroad Equip. Co. v Blair, 145 NY 607, supra.) Hence, where a judgment is used as a link in a chain of title, a third person is free to raise his own superior title to break the chain. This being done, the judgment then becomes irrelevant. If, however, a person cannot establish his own superior title, he may not collaterally attack the prior judgment.[6] For a party may not create issues which only affect the rights of others. (Matter of Holland, 84 Misc 2d 922.)
Assuming the State was not a party to the 1974 action,[7] it would appear that it may assert its own title to refute the claimants’ title. This presents an interesting question. May the State appropriate property and yet assert its own title and thereby, in effect, seek to prove that it was not necessary to appropriate the property in the first instance? Despite the apparent self contradiction and illogic of such a position, there is authority that it may be done. (See People ex rel. Palmer v Travis, 223 NY 150.) The latter case rests on the proposition *988 that, unlike a municipal taking where a court proceeding is initiated by the condemnor, the taking by the State is not an admission of the State’s lack of title, since the court proceeding is initiated by the property owner. This rule, however, ignores the significance of the filing of the appropriation map, which act purports to transfer title to the State. Further, the rule allows the State to utilize an appropriation proceeding to determine its title to property, thus circumventing the proper procedures established under article 15 of the Real Property Actions and Proceedings Law. Were it not for the fact that this court is bound by the holding in People ex rel. Palmer v Travis (223 NY 150, supra), the court would hold that the State may not utilize an appropriation proceeding in such a manner. The court urges that the aforesaid rule be re-evaluated with the view towards limiting its application to those circumstances where only the extent of an appropriation is in question (i.e., boundary disputes), rather than to those circumstances where the State is attempting to clear its own title to the entire parcel purportedly taken.
Turning now to the issue of the State’s title, the claimants contend that the 1942 judgment collaterally estops the State from asserting any title to the entire disputed parcel. The first question is whether the doctrine of collateral estoppel can be applied to the State where the original judgment was not entered by a Judge of the Court of Claims. This court concludes that it can (contra Duverney v State of New York, 96 Misc 2d 898, 906).[8] Section 8 of the Court of Claims Act specifically sets forth: "The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations” (emphasis added). The latter statement would presumably apply to collateral estoppel. This is especially true where the State has instituted a prior action for ejectment in Supreme Court. To hold otherwise would allow the State to first invoke the jurisdiction of Supreme Court to determine its title to property, and then, if it was not satisfied with the results there, to take the property *989 and again raise the very same issue de nova in an appropriation proceeding in the Court of Claims. In sum, the application of the Supreme Court judgment here is no more a circumvention of Court of Claims jurisdiction, than is the application of an arbitrator’s finding a circumvention of Supreme Court jurisdiction. (See Matter of American Ins. Co. [Messinger-Aetna Cas. & Sur. Co.], 43 NY2d 184; Rembrandt Inds. v Hodges Int., 38 NY2d 502.)
In order to apply the doctrine of collateral estoppel, however, it must be shown that there is an identity of issue which has necessarily been decided in the prior action and is decisive in the present action. Further, there must have been a full and fair opportunity to contest the issue now said to be controlling. (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, supra.) In this regard, although the 1942 judgment ultimately determined the State’s lack of title to only parcel "A”, such determination was solely predicated on the State’s lack of title to the entire easterly portion of Lot No. 24. Therefore, the latter determination was essential to the court’s ultimate finding. Moreover, the State had a full and fair opportunity to contest its title to the easterly portion of Lot No. 24. The court notes that had the 1942 judgment been appealed, the latter issue could have been raised. (See Restatement, Judgments 2d, Tent. Draft No. 4, § 68, comment h.) In sum, the court concludes that the State is collaterally estopped from asserting any title that it may have acquired prior to 1942. Moreover, there is no evidence that the State acquired any title or interest subsequent to that time.
Accordingly, the State has not rebutted the evidence of title to the entire disputed parcel as established by the 1974 judgment, and the court concludes that the claimants have met their burden of proof in this regard.
ACCESS ISSUE
The court must next decide whether there was access to the subject property at the time it was taken. The subject was bounded on the north by Fawn Lake; on the east, in part, by Lot No. 25, owned by the State, and, in part, by Sacandaga Lake; on the south, also by Sacandaga Lake; and on the west by the 100+ acres of Lot No. 24, owned by the State. Vehicular access was obtained by a dirt road over the State’s westerly portion of Lot No. 24.
The State contends that the access over its property was *990 permissive, and terminable at will. The claimant contends that they enjoyed a permanent easement over the road. For the claimants to succeed, they must demonstrate that an easement had been obtained in one of the following ways: (1) A private easement by express grant or reservation; (2) A private easement by prescription; (3) An easement by necessity; (4) An easement implied from an existing use upon a prior severence of title; or, (5) The existence of a public highway.

Private easement by express grant or prescription:

The issue of the existence of a private easement by express grant or by prescription may be dealt with summarily. There is no evidence that would establish that the claimants, or their predecessors in title, ever obtained an easement by deed (grant or reservation) over the State’s westerly 100+ acres of Lot No. 24. With respect to a prescriptive easement, there is some evidence that the State’s predecessors in title used the dirt road for access to Sacandaga Lake. This, however, is insufficient to establish a prescriptive easement in favor of the owners of the easterly portion of the lot. In addition, an easement by prescription could not have been obtained over the westerly portion of the lot, subsequent to its acquisition by the State in 1901, since the land was held by the State in its sovereign capacity. (People v System Props., 2 NY2d 330; People v Baldwin, 197 App Div 285, affd 233 NY 672.)

Easement by necessity:

Where there is a conveyance of a part of a tract of land, such that the remainder is deprived of all access, a reservation of an easement by necessity over the part conveyed may be implied. (Palmer v Palmer, 150 NY 139.) Since, under such circumstances, an easement by necessity is dependent upon an implied reservation, it presumes a prior unity of title. (McQuinn v Tantalo, 41 AD2d 575; Garvin v State of New York, 116 Misc 408.) In addition, the easement must be strictly necessary to the reasonable use and enjoyment of the land (Parsons v Johnson, 68 NY 62; Westover Sportsman's Assn. v County of Broome, 59 AD2d 998; Matter of City of New York [East 96th St.], 243 App Div 809), and should an alternative means of access subsequently become available, the easement will be extinguished. (Palmer v Palmer, 150 NY 139, supra.) It should be noted that the easement is not dependent upon an *991 apparent and visible use existing at the time of the original conveyance. (See 17 NY Jur, Easements and Licenses, § 87.)
Lot No. 24 was last owned in its entirety by William Spier in 1826. At this time, he conveyed the westerly 100+ acres, retaining the property that was the subject of this claim. As a result of this conveyance, access to the subject by land was severed. The only access remaining was over the lakes. In this regard, it is the general rule, that where there is access to a property over a navigable body of water (See People v Canal Appraisers, 33 NY 461; City of Albany v State of New York, 71 Misc 2d 294), an easement by necessity over a land route may not be obtained. (Moore v Day, 199 App Div 76, affd 235 NY 554; Bauman v Wagner, 146 App Div 191.) An exception to the aforesaid rule appears to exist where it is shown that the navigable body of water has not been used as a highway for commerce and travel for many years. (Lochte v Ciccarelli, 270 App Div 798.) The burden is on the claimants to establish that either the lakes were not navigable or that the exception applies. This they failed to do. Hence, the court must conclude that, as of the date of taking, the claimants did not enjoy an easement by necessity over the State’s westerly 100 acres of Lot No. 24.

Easement implied from existing use upon severance of title:

An easement may also be implied from an apparent and visible use existing at the time of severance of title. The rationale for this rule is that an owner of land, who sells a part thereof, impliedly reserves to himself all apparent and visible easements that are necessary for the reasonable use of the property retained. (Heyman v Biggs, 223 NY 118; Alieva v Tornatore, 254 App Div 525, affd 279 NY 770; 17 NY Jur, Easements and Licenses, § 62.) It is essential, however, that the use from which the easement is to be implied, existed at the time of the severance of title. (Hafner v Freeman, 257 App Div 990, affd 285 NY 831; Fink v Friedman, 78 Misc 2d 429.) There is no evidence, that in 1826, there was such a use. Accordingly, no easement can be implied.

Existence of a public highway:

A public highway may be established either by dedication (see 15 NY Jur, Dedication, §§ 3, 11-31), by user (2 NY Jur, Adverse Possession, § 125), or by statute (City of Cohoes v President, Managers & Co. of Delaware & Hudson Canal Co., 134 NY 397). There is no evidence of any dedication or of an acquisition pursuant to statute. Although a town highway *992 existed in the area prior to the State’s acquisition in 1901, the weight of the evidence is that it terminated within the westerly 100+ acres of Lot No. 24 and did not include the dirt road leading to the claimants’ property. Subsequent to the State’s acquisition in 1901, any dedication would have been barred by section 1 of article XIV of the New York State Constitution, or its predecessor.
With respect to the establishment of a highway by user, the general rule is that the same may not be obtained over land held by the State in its sovereign capacity. (Donahue v State of New York, 112 NY 142.) Hence, it may not have been obtained here, over land in the forest preserve, subsequent to 1901. (People v Baldwin, 197 App Div 285, affd 233 NY 672, supra; People v Douglass, 217 App Div 328.) In addition, if it is to be established that a highway by user existed prior to 1901, maintenance by a public authority must be shown. (People v Brooklyn & Queens Tr. Corp., 273 NY 394; Nogard v Strand, 38 AD2d 871.) There was no such evidence here that the town, or other public authority, maintained the dirt road to claimants’ property, beyond the termination of the town road, prior to 1901.

Conclusion:

In sum, the claimants have not established that they have access to their property, except over Sacandaga Lake as conceded by the State.
INTEREST ISSUE
The State contends that the claimants are not entitled to interest on the award, since the claimants have remained in occupancy of the subject, subsequent to the taking. It is the general rule that an owner who remains in possession of appropriated property is not constitutionally entitled to interest on the award for the period of occupancy. (La Porte v State of New York, 6 NY2d 1.) The rationale for this rule is that interest is compensation for the deprivation of the use of the property taken, pending an award.
Statutory interest is not, however, automatically suspended under the La Porte rule. Rather, the condemnor has the burden of showing that the interest owed is offset by the value of the condemnee’s use of the property. To do so, the State must prove the fair rental value of the property during the period of the condemnee’s occupancy. (Matter of Porter v *993 McMorran, 48 Misc 2d 79.) Such proof is totally lacking here. Therefore, the claimants are entitled to the statutory interest on the award herein.
VALUATION ISSUE
The claimants’ appraiser valued the property on the assumption that it had access by land. Since this essential premise has not been found by the court, the claimants’ appraiser’s report and opinion must be rejected in its entirety. Therefore, the court is constrained to accept the value found by the State’s appraiser, who valued the property with access across Sacandaga Lake, or to explain any departure therefrom. (Matter of City of New York [A. & W. Realty Corp.], 1 NY2d 428; Matter of Rochester Urban Renewal Agency v Phillips, 60 AD2d 752; Ridgeway Assoc. v State of New York, 32 AD2d 851.) After a careful examination of the evidence, the court adopts the valuation, and the underlying premises, contained in the report of the State’s appraiser.[9] Therefore, the court finds the total value of parcel "A” to be $75,000 (land $30,000; improvements $45,000), and the total value of parcel "B” to be $88,800 (all land).
AWARD
Accordingly, the claimant, John J. Peasley, individually, is entitled to an award in the sum of $163,800 (all direct damages), with interest from November 18, 1974 to May 18, 1975, and from May 19, 1976 to the date that this decision is filed, and thereafter, to the date of entry of judgment herein.

. The appropriation was pursuant to ECL 3-0305 and the proceeding was described as Q-AFP Hamilton 146, Map No. 8945, Parcel Nos. A and B. The map and description of the property appropriated, incorporated herein by reference, was filed in the Hamilton County Clerk’s office on November 18, 1974. The claim, thereafter filed, has not been assigned. The court has viewed the property.

. Lot No. 24 contained a total of 187.82 acres, but had been stated as containing 180 acres and 186.6 acres in previous surveys.

. William Demarest died in 1937, leaving Cora B. Demarest his sole surviving heir and devisee.

. The deed reserved a life estate in a portion of the subject property to Blanche Peasley. Mrs. Peasley died during the course of this trial and her son John J. Peasley was appointed the executor of her estate and is her sole heir and devisee. Upon the trial, the title of this claim was amended to reflect the substitution of John J. Peasley, as executor of his mother’s estate.

. The transcript of the testimony underlying the 1974 judgment was received in evidence. Since the requirements of CPLR 4517 were not satisfied, the transcript will not be considered for the truth of the matters asserted therein.

. The court recognizes that under certain circumstances a prior judgment may be collaterally attacked because of the court’s lack of jurisdiction (O’Donoghue v Boies, 159 NY 87), or for fraud or collusion. (Railroad Equip. Co. v Blair, 145 NY 607). This presumes that the party who seeks to attack the prior judgment had standing by reason of a then existing interest in the subject of the judgment. As is stated in this opinion, no such relationship was shown here.

. It may be argued that the State was a party to the 1974 action by virtue of its appearance in response to a personally served summons and complaint. The latter was sufficient to give it notice that its interests were in controversy. This being the case, the judgment would be res judicata on the issue of title. (See Matter of American Ins. Co. [Messinger-Aetna Cas. & Sur. Co.], 43 NY2d 184.) The court notes that in a prior application by the State for summary judgment, it was held that the 1974 judgment had neither res judicata nor collateral estoppel effect upon the State. (Peasley v State of New York, Ct of Claims, May 23, 1977, De Iorio, J.) This finding, however, was not essential to the ultimate determination and was in the nature of dictum, not binding on this court.

. The court in Duverney v State of New York, 96 Misc 2d 898, 906, relied on People v Delaware & Hudson R. R. Corp., 42 AD2d 618, and Horoch v State of New York, 286 App Div 303, modified on other grounds, 286 App Div 977. These cases were overruled by Matter of Tierney v State of New York, 55 AD2d 158. This court, however, would concur with the results in Duverney for the other grounds set forth in the decision.

. The claimant, Blanche W. Peasley, possessed a life use of the cottage occupied by her. Both appraisers valued the property in fee simple absolute and did not find any value for the life use. Accordingly, John J. Peasley, in his individual capacity, will be entitled to the entire award, and the claim of John J. Peasley, as executor of the estate of Blanche W. Peasley, is hereby dismissed.