William J. Regan, S.
Simone Wirth died in the City of Buffalo on May 30, I960, a resident of the County of Erie intestate. Her distributees were Norbert F. Wirth, husband, Simone Wirth, an infant daughter, and four other children, all adults, to wit: Evelyn Boudon, Pierre Boudon, Claude Boudon and Guy Boudon. The four last-named were 'children by a former marriage and all reside in France.
Petition for letters of administration in this estate was made by Norbert F. Wirth, the husband, in which he states, “ That your petitioner has been indicted by the Grand Jury of the County of Erie, charged with murder in the first degree in connection with the death of the decedent and is at present in the custody of the Sheriff of Erie County confined to the Erie County Jail at Buffalo, New York, awaiting trial.”
Because of the necessity for a legal representative to be appointed forthwith under the circumstances, on July 26, 1960 letters of administration were issued by this court to George J. Evans, Public Administrator of Erie County. Following the death of the aforesaid George J. Evans and the appointment by this court of Kevin D. Cox as Public Administrator, said Kevin D. Cox was appointed successor administrator in this estate on the 21st of May, 1968.
There is presently before this court the judicial settlement proceeding of the accounts of said Kevin D. Cox. All persons *301 interested have been cited and the balance of the estate is now ready for distribution. The question by this court is whether or not Norbert F. Wirth, the husband, may share in this estate.
There has been filed in this court a certification by the Clerk of the County of Erie to the effect that “ the above named defendant, Norbert Wirth, was found Not Guilty by a jury by reason of insanity in the County Court of Erie County before the Hon. Burke I. Burke, Judge of the County Court, on December 12, 1960.” There is also a statement in the file signed by Joseph J. Scanzo, M. D., Director of the Buffalo State Hospital, which recites in part: “ Norbert Wirth was admitted here December 15, 1960 in accordance with Section 454 of the Code of Criminal Procedure. He had been charged with two counts of murder, causing the death of Simone Wirth and Henry McDermitt. He entered a plea of not guilty and was found not guilty by reason of insanity. His commitment here was mandatory, but he showed no evidence of mental illness here and we therefore recommended to the court that he be released. In response to an order from Judge Burke I. Burke he was released in a convalescent status February 15,1961. He reported to the hospital thereafter for the routine five years and was discharged March 23,1966.”
Matter of Eckardt (184 Misc. 748, 753), decided in Orange County, New York in 1945, states: “ There are cases in other jurisdictions which hold that regardless of whether the person who murdered another was sane or insane, acquitted or convicted or not tried at all, he was entitled under the statutes to his distributive share, the reasoning being that courts could not engraft an exception upon the statute. It is quite unnecessary to pursue this question here for New York is committed to the principle set forth in the Riggs case ”.
The case of Riggs v. Palmer (115 N. Y. 506, 511-512) the leading case on this subject, states: “ Besides, all laws as well as all contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law, administered in all civilized countries, and have nowhere been superseded by statutes.”
The Eckardt case (supra) was one of first impression but recognized the fundamental bases set out in the Riggs v. Palmer decision. The Eckardt case considers various applications of *302 the New York rule. For example, it cites the Matter of Wolf (88 Misc. 433). In that case the husband, in attempting to take the life of a third party, accidentally killed his wife. Surrogate Fowler decided that under the particular circumstances the husband had no intent to kill the wife and therefore should be permitted to share in the estate. Other cases, in referring to the Wolf matter, criticize his decision and Surrogate Taylor, in the Eckardt case states (p. 751): “Surrogate Fowler seems to have taken a rather charitable and broadminded view of the situation ’ ’.
There are numerous other cases decided in this State upon various facts but all appear to agree that in a state of facts such as presently before us the husband committed no legal wrong and that the principle barring him from profiting from his own wrong would be inapplicable.
A summary of a court’s decision in New Jersey was one of first impression and indicated that the court had studied this question as decided in other jurisdictions, including Illinois, New York, Michigan, United States Court of Appeals, Sixth Circuit Minnesota and Missouri. The court came to the conclusion that there were three situations in which acquisition of property from one deceased was permitted to his slayer even though the death was initiated by a murder. The following language used by the New Jersey court we believe summarizes the New York State holding (Campbell v. Ray, 102 N. J. Super. 235, 239): “ that a wrongdoer may acquire property from his victim if the slayer is insane at the time of the commission of his act if the killing was accidental or in self defense, or if the wrongdoer was convicted of the reduced charge of manslaughter. ’ ’
The court continued discussing the doctrine that a person should not profit by his own wrong (p. 241): “When one who perpetrates a killing is insane, it is appropriate to inquire whether the basis upon which such a doctrine rests still exists. As a civilized society we recognize that insanity is a defense against punishment for crime.” Therefore, it appears that where one benefited from an unlawful act, such as a killing committed without intent because of insanity, it cannot be concluded that he perpetrated the act with the end in view of profiting thereby. “ Since there is nothing in our law with respect to this question, based upon the reasoning of the courts * * * and the absence of any expression by the Legislature in this area, I conclude that it is not against the public policy of this State to permit one who has killed while insane subsequently to take a share of the estate of the deceased or the *303 proceeds of a policy of life insurance on the life of the deceased of which the insane killer is beneficiary.” (Campbell v. Ray, p. 242.)
In the case before us all other distributees have appeared and consented to the husband’s share in this estate. The court is familiar with all the facts involved in the death of Simone Wirth and concurs in the finding of the Criminal Court’s verdict holding that Norbert Wirth was not guilty by reason of insanity, and will therefore order that Norbert Wirth is entitled to his intestate distributive share as surviving spouse.