OPINION OF THE COURT
Martin Schoenfeld, J.
BACKGROUND
As set forth more fully in this court’s decision and order of December 8, 1997, commencing in or about 1983, third-party defendants “Raymond H.” and “Virginia G.” (collectively the Parents) physically abused their children, culminating in the death of the Parents’ youngest son, “Alan G.”, on March 5, *857 1990. Subsequently, Raymond H. pleaded guilty to “manslaughter in the first degree”, i.e., with intent to cause serious physical injury, he caused Alan’s death, and Virginia G. (after being indicted for murder) pleaded guilty to two counts of “assault in the second degree”, i.e., during the two months prior to Alan’s death, she intended and did cause him physical injury (by beating him with a belt). Raymond H. is still in jail; Virginia G. was incarcerated for a period of time and has since been released; and Alan’s siblings — “Mark, Kevin, Steven and Susan G.” (collectively the Infant Plaintiffs) — have been in foster care since a Family Court finding (moving exhibit T) that they were “severely abused.”
In or about 1992 the Infant Plaintiffs sued the City of New York and related entities, claiming, essentially, that defendants were aware of the ongoing abuse and failed to prevent it.[1] In or about 1993 Alan G.’s estate (the Estate), by its administrator, the Bronx Public Administrator (BPA), commenced litigation for his “pain and suffering and wrongful death.”[2] On or about September 6, 1996 defendants filed the instant third-party action, seeking “contribution and indemnification” from the Parents, who are currently the named distributees of the Estate.
THE INSTANT MOTIONS
The Estate now moves, pursuant to New York common law and EPTL 4-1.4 and 5-4.4 (a) (2), to disqualify the Parents as distributees of the Estate. Raymond H. now moves “for appointment of counsel.” The defendants now cross-move, pursuant to SCPA 403 (2), for the appointment of guardians ad litem for Raymond H. and Virginia G., or alternatively, pursuant to CPLR 603 and 325 (e), to sever the claims of the Estate and to transfer them to the Surrogate’s Court, Bronx County.
*858 DISCUSSION
Jurisdiction
As a court of “general original jurisdiction in law and equity” (NY Const, art VI, § 7 [a]; Kagen v Kagen, 21 NY2d 532, 536 [1968]), this court has subject matter jurisdiction over all the instant proceedings. (See generally, Pollicina v Misericordia Hosp. Med. Ctr., 82 NY2d 332, 339 [1993].)
Furthermore, the Legislature has specifically granted Supreme Court jurisdiction over requests, pursuant to EPTL 4-1.4 (a), to disqualify parents from sharing in the estate of a deceased child. (See, EPTL 5-4.4 [a] [2] [“(t)he court which determines the proportions of the pecuniary injuries suffered by the distributees * * * shall also decide any question concerning the disqualification of a parent, under 4-1.4 * * * to share in the damages recovered.”].)
Appointment of Counsel
In support of his motion for the appointment of counsel Raymond H. states, essentially, that the instant action is “extremely complex and confusing”; that he is a “layman in the law” and “unable to adequately defend [him]self’;[3] that he needs counsel; that other parties are represented by “experienced” attorneys; that he is impecunious; that heretofore he has informally been given poor advice about the instant action (viz., that he should ignore it and it will “just go away”); and that now he wants to protect his interest in this action.
The Bronx Public Administrator “takes no position on Raymond H.’s request for appointment of counsel except to note that under New York law an indigent does not have a right to counsel in private, civil litigation”, citing Matter of Smiley (36 NY2d 433 [1975] [matrimonial action]). Smiley holds that court appointment of counsel in noncriminal cases is discretionary (see, CPLR 1102 [a]), not mandatory. Indeed, in Morgenthau v Garcia (148 Misc 2d 900 [Sup Ct, NY County 1990]), the court denied a request for the appointment of counsel by an incarcerated, civil-forfeiture defendant. This court sees no reason, as a matter of fairness or expediency, to exercise its discretion to appoint counsel for Raymond H. He has presented no facts that counsel could conceivably fashion into a defense to the instant motion to disqualify; he is *859 judgment-proof; and he has pleaded guilty to the manslaughter of his own child.[4] Obviously, counsel can be appointed later if the present situation changes or if unforseen circumstances arise.
Disqualification
The Estate has carefully documented at least some of the abuse Alan suffered at his Parents’ hands. His condition at death summarizes his life: “hospital records revealed [Alan] had sustained multiple lacerations and bruises in various stages of healing all over his body. X-rays revealed fractures of his sixth and seventh ribs also in the process of healing. His rectum was enlarged — indicating possible sexual abuse. His lower lip was split and three of his teeth had been knocked out. Fatal child abuse was cited as the cause of death.” (Moving mem of law, at 12, citing, inter alia, various medical records.) An autopsy was performed by a Deputy Medical Examiner in front of four other doctors. The autopsy report (moving exhibit V, at 6) lists the cause of death as “[m]ultiple blunt impact injuries of head, chest, abdomen and extremities with laceration of liver and hemoperitoneum due to fatal child abuse.”
It has long been held that a murderer may not inherit from the estate of the victim. (E.g., Riggs v Palmer, 115 NY 506, 511 [1889] [“No one shall be permitted * * * to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime”]; see, Matter of Grey v Levitt, 76 Misc 2d 720, 721 [Sup Ct, Albany County 1974] [conviction for manslaughter “precludes inheritance or any profiting from such wrong.”].)[5]
Raymond H. is clearly disqualified as a distributee of the Estate because he pleaded guilty to the first degree manslaughter of Alan. Defendants’ citation to Matter of Barrett (224 AD2d 415 [2d Dept 1996]), for the proposition that a hearing must be held on the instant disqualification request, is unavailing since in that case, unlike here, there had not been a proper judicial *860 resolution of the criminal intent issues. As noted in Grayes v DiStasio (166 AD2d 261, 262-263 [1st Dept 1990]): “A criminal conviction, whether by plea or after trial, is conclusive proof of its underlying facts in a subsequent civil action and collaterally estops a party from relitigating the issue.”
The same general, common-law principle disqualifies Virginia G. from being a distributee.[6] She physically abused Alan and, most importantly here, contributed significantly to his death.
Furthermore, an alternative ground exists for disqualifying Virginia G. EPTL 4-1.4 (a) provides as follows: “[n]o distributive share in the estate of a deceased child shall be allowed to a parent who has failed or refused to provide for, or has abandoned such child while such child is under the age of twenty-one years, whether or not such child dies before having attained the age of twenty-one years”. EPTL 5-4.4 (a) (2) incorporates this provision into wrongful death law. While the instant situation may not be exactly what the drafters had in mind (to say the least), it clearly fits within the ambit of the statute in wording and in spirit. As pointed out by plaintiffs, Family Court Act § 1012 (e) (i) provides that a child is “abused” if his or her parent: “inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ”. A child is “neglected” if he or she is subject to “the infliction of excessive corporal punishment” (Family Ct Act § 1012 [f] [i] [B]). In sum, as a matter of case and statutory law, morality and common sense, Virginia G. may not inherit from Alan’s Estate.
Appointment of Guardians Ad Litem
SCPA 403 (2) provides that “[a] person under disability * * * shall except as otherwise expressly provided appear by a guardian ad litem * * * whenever such person is a necessary party or for other reason the court deems it necessary to appoint a guardian ad litem to protect the interests of such party.” Persons who are “incapacitated” or who are “confined as a prisoner who fail[ ] to appear under circumstances which the court finds are due to confinement in a penal institution” are *861 defined as “[p]erson[s] under disability” in SCPA 103 (40). An “incapacitated person” is a person “who for any cause is incapable adequately to protect his or her rights” (SCPA 103 [25]).
In support of their cross motion defendants state, inter alia, that when the BPA petitioned for letters of administration in 1993 he named the Parents as distributees; that at that time both Parents “were under a disability * * * confined in a penal institution — and thereby entitled to the appointment of guardians ad litem pursuant to SCPA 403 (2)”; and that Virginia G. is “apparently * * * in a fragile emotional state.” As defendants note, when an estate is administered a guardian ad litem must be appointed for an interested party under a disability. (See, Matter of Winston, 92 Misc 2d 208, 209 [Sur Ct, NY County 1977].) The BPA argues that defendants do not have standing to object to the BPA’s letters of administration; argues that “there is nothing infirm about the Letters”; notes that there is no motion challenging the letters; and notes that the Parents were served with the request for the letters.
This court does not reach the issue of whether there is anything “infirm about the letters” for several independent reasons. First, neither of the Parents has raised this issue. Second, defendants apparently do not have standing to do so. (See, Matter of Menis, 137 AD2d 692 [2d Dept 1988] [“In the instant case the petitioner(’s) only connection with the decedent’s estate is the fact that he is a defendant in an action commenced by the estate to recover damages for the wrongful death of the decedent as well as for her conscious pain and suffering. (Petitioner) therefore does not qualify as a party who may petition a court for revocation of letters of administration pursuant to SCPA 711.”].) Third, there is no motion attacking the validity of the letters, nor will the court exercise its discretion in this regard. (See, supra, at 693.) As defendants seem apt to forget, the instant action is about whether defendants culpably failed to protect the children from physical abuse; it is not an estate administration in Surrogate’s Court.[7]
Neither parent has asked the court to appoint a guardian ad litem, and this court sees no reason to do so.
*862 Severance
The request to sever the claims of the Estate of Alan G. from the claims of the other siblings and to transfer the former to Surrogate’s Court is denied as it would be a waste of judicial resources and could, theoretically, result in inconsistent adjudications.
CONCLUSION
Thus for the reasons set forth herein, (1) the persons known in this action as “Raymond H.” and “Virginia G.” are hereby disqualified as distributees of the Estate of Alan G.; (2) Raymond H.’s motion for the appointment of counsel in this action is denied; and (3) defendants’ cross motion for the appointment of guardians ad litem for Raymond H. and Virginia G., or alternatively, to sever the claims of the Estate of Alan G. and to transfer them to the Surrogate’s Court, Bronx County, is denied.

. One hopes that the fact-pattern alleged in this and similar lawsuits will be seen less often in light of the recent settlement of Marisol A. ex rel. Forbes v Giuliani (185 FRD 152 [SD NY]), in which, inter alia, the City and State agreed to considerable new oversight of the City’s Child Welfare Agency. (Alden, Pact in Child Welfare Lawsuit is Approved, NYLJ, Apr. 1, 1999, at 1, col 5.)

. According to an Assistant Corporation Counsel’s letter dated March 4, 1998, Justice Walter B. Tolub may have dismissed all or part of the wrongful death cause of action.

. In a November 30, 1997 letter to the court he states that he has “an 8th grade reading level.”

. The court notes in passing that to a certain extent the positions that Raymond H. might be expected to take are being or will be advocated by either the plaintiffs or the defendants, all of whom are being vigorously represented.

. In a similar vein, chapter 150 of the Laws of 1998, effective July 7, 1998, amended the Domestic Relations Law and the Family Court Act to provide that, with narrow exceptions, a Judge may not award child custody or visitation to a person who is convicted of first or second degree murder of the child’s parent, legal custodian or legal guardian. (Domestic Relations Law § 240 [1-c].)

. Virginia G. was served with, but has not submitted any opposition to, the motion to disqualify.

. The purpose of the affidavit of Raymond H. dated November 4, 1997, by which he requests appointment of counsel appears primarily to be in defense of the third-party lawsuit commenced by the City of New York, a suit which this court previously described as being “particularly and chillingly obtuse.” (See, decision and order, at 15, dated Dec. 8, 1997.) Defendants’ obsession with the interests of the Parents in this litigation continues to baffle the court.