OPINION OF THE COURT
John B. Riordan, J.
In this administration proceeding, the petitioner, Ciliana Joseph, seeks letters of administration with respect to her sister’s estate. Petitioner also asks that the court disqualify as a *380 distributee the decedent’s spouse, Jean Alexis, who is currently incarcerated after having been convicted of second degree murder in connection with the decedent’s death. In addition to her husband, the decedent was survived by eight brothers and sisters. Temporary letters of administration issued to the petitioner on December 4, 2003.
On April 21, 2004, the decedent’s husband was indicted for murder in the second degree. Second degree murder is an intentional felony under New York’s Penal Law (Penal Law § 125.25 [1]). After having been convicted at trial of the charge on March 10, 2005, the decedent’s husband was sentenced to 25 years to life on April 11, 2005. The decedent’s husband filed a notice of appeal in May of 2005. Since the petitioner requested that the decedent’s spouse be disqualified as a distributee by reason of his conviction for the decedent’s murder, a guardian ad litem was appointed for him. Pursuant to this court’s prior decision dated March 23, 2006 (Decision No. 991/2006), the guardian ad litem’s role was limited to reporting on the status of the appeal.
The guardian ad litem has advised the court that, although his ward has informed him that he does intend to perfect his appeal, it is unlikely that an appeal will be successful. The court has also received correspondence from the decedent’s spouse wherein he states “I want the Court to know that I also have no interests on [szc] my decedent wife [sic] Adeline Joseph Estate.” Thus, the issue before the court is whether the conviction of the decedent’s spouse for murder in the second degree is sufficient without a hearing to disqualify him as a distributee of the decedent’s estate.
It is well-established law that one who takes the life of another should not be permitted to profit from his own wrong and shall be barred from inheriting from the person slain (Riggs v Palmer, 115 NY 506 [1889]; Matter of Covert, 97 NY2d 68 [2001]; Matter of Miller, 17 Misc 2d 508 [1959]; Matter of Sparks, 172 Misc 642 [1939]). In Riggs v Palmer (115 NY 506, 511 [1889]), the Court articulated the basic principle that “[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime.” Although there is no express statutory provision denying, to one who killed, the right to inherit from his victim (but cf EPTL 4-1.6 regarding joint bank accounts), numerous cases since Riggs v Palmer have reaffirmed the applicability of the common-law general principle *381 that one should not be permitted to profit by taking the life of another and, in particular, that one who feloniously murders shall not be entitled to share in his victim’s estate (Matter of Covert, 97 NY2d 68 [2001]; Petrie v Chase Manhattan Bank, 38 AD2d 206 [1972], mod 33 NY2d 846 [1973]; Matter of Jacobs, 2 AD2d 774 [1956], affd 3 NY2d 723 [1957]; Bierbrauer v Moran, 244 App Div 87 [1935]; Matter of Kirkman, 120 Misc 2d 278 [1983]; Matter of Bach, 81 Misc 2d 479 [1975], affd 53 AD2d 612 [1976]; Matter of Grey v Levitt, 76 Misc 2d 720 [1974]; Matter of Loud, 70 Misc 2d 1026 [1972]; Matter of Miller, 17 Misc 2d 508 [1959]). These cases hold essentially that there is no vesting of the estate in the wrongdoer because the crime precludes the wrongdoer from becoming a distributee (Matter of Sparks, 172 Misc 642 [1939]; Matter of Wolf, 88 Misc 433 [1914]).
The basic rule has been expanded so that the wrong need not have been committed with an intent towards acquiring the victim’s property or even with a desire to bring about the victim’s death (Matter of Drewes, 206 Misc 940 [1954]; Matter of Sparks, 172 Misc 642 [1939]). In addition, the common-law principle has been applied to wrongdoers other than a legatee under a will or a distributee in intestacy. The courts have similarly denied a beneficiary of a life insurance policy from receiving the life insurance proceeds where he stabbed the insured to death (Matter of Loud, 70 Misc 2d 1026 [1972]) and barred an individual convicted of manslaughter from receiving death benefits on behalf of his victim under the Retirement and Social Security Law (Matter of Grey v Levitt, 76 Misc 2d 720 [1974]).
The application of the Riggs v Palmer principle is not always straightforward, and not all wrongful conduct will disqualify a person as a distributee (5 Warren’s Heaton, Surrogates’ Courts § 74.13 [6th ed rev]). In Matter of Eckardt (184 Misc 748 [1945]), a woman, who was a somnambulist, killed her husband. She was acquitted on the grounds that she did not know the nature and quality of her act. The court reasoned that the wife was not profiting from her own wrong since she had not done anything “legally wrong.” Similarly, there is some authority that if the killing was unintentional or accidental, the rule will not be applied (Matter of Savage, 175 Misc 2d 880 [1998] [holding that one who kills by accident does not forfeit the right to inherit from the decedent]; Matter of Wolf, 88 Misc 433 [1914] [husband convicted of manslaughter for killing his wife was permitted to take as a distributee where it appeared that he killed her when *382 he really intended to kill her paramour]). If the killing was done in self-defense (Matter of Savage, 175 Misc 2d 880 [1998]) or by reason of insanity (Matter of Wirth, 59 Misc 2d 300 [1969]), the principle barring the person from profiting from his wrong is likewise inapplicable.
The petitioner maintains that the decedent’s spouse’s criminal conviction is conclusive proof of its underlying facts and is the proper subject of collateral estoppel in this administration proceeding (S.T. Grand, Inc. v City of New York, 32 NY2d 300 [1973]). Thus, petitioner reasons that the criminal conviction for intentional murder (murder in the second degree) conclusively proves the element of an intentional killing which renders the decedent’s spouse ineligible as a distributee obviating the need for a hearing.
This court has held that “[a] criminal conviction either by plea or after trial is conclusive proof of its underlying facts in a subsequent civil proceeding and collaterally estops a party from relitigating the issues” (Estate of Mirissis, NYLJ, Mar. 16, 1993, at 25, col 3, citing Merchants Mut. Ins. Co. v Arzillo, 98 AD2d 495 [1984]; Grayes v DiStasio, 166 AD2d 261 [1990]). In Mirissis, this court held that a de novo hearing was not necessary in order to prove that the wrong was intentional where the killer had entered a plea to manslaughter in the first degree (see also Matter of Loud, 70 Misc 2d 1026 [1972]). Nevertheless, this court held that before declaring a forfeiture on the part of the killer, “the court should review the transcript of the minutes of the plea.” Likewise, the court found that since “the record of conviction indicates that a notice of appeal was filed . . . the guardian ad litem should report on the status of same” (Estate of Mirissis, NYLJ, Mar. 16, 1993, at 25, col 3).
Other courts have similarly held that “[a] criminal conviction, whether by plea or trial, is conclusive proof of the same facts in a subsequent civil proceeding and collateral estoppel bars a defendant from relitigating those issues that were raised, or may have been raised, in the criminal proceeding.” (Matter of Savage, 175 Misc 2d 880, 882 [1998]; see also Estate of Camerlengo, NYLJ, Nov. 3, 2000, at 31, col 2 [no hearing to disqualify respondent as a distributee was necessary where respondent was found guilty after trial of two counts of murder in the second degree and one count of assault]; Mark G. v Sabol, 180 Misc 2d 855 [1999] [no disqualification hearing required where respondent pleaded guilty to first degree manslaughter of the decedent]; Matter of Kirkman, 120 Misc 2d 278 [1983] [no hear *383 ing de novo required where there was a conviction of murder in the second degree after trial].)
Since, in the instant case, the decedent’s spouse has filed but not yet perfected his appeal, the question is whether his appeal has any bearing on the collateral estoppel effect of his criminal conviction in this proceeding. In determining whether collateral estoppel should apply, it has been recognized that consideration should be given to the existence of an appeal (Matter of Brown, 132 Misc 2d 171 [1986]). In Brown, the issue was whether an insurance company could be compelled to pay the proceeds of a life insurance policy on the decedent’s life to his estate as opposed to the named beneficiary who had been convicted of second degree murder in connection with the death of the decedent. The court reasoned that no civil hearing was necessary to establish forfeiture because the beneficiary had been convicted of an intentional homicide after trial. However, since the matter was the subject of an appeal, the court considered whether the carrier could rightfully refuse to pay the proceeds to the estate pending the appeal. The court relied on Duverney v State of New York (96 Misc 2d 898 [1978], affd 76 AD2d 962 [1980]) and Read v Sacco (49 AD2d 471 [1975]) and held that New York follows the “full and fair opportunity” test in applying the doctrine of collateral estoppel (132 Misc 2d at 172). The court went on to hold that:
“While strict construction would hold that the pendency of an appeal does not affect the judgment’s use of an estoppel (Sullivan v Ringler & Co., 69 App Div 388, see also, 9 Carmody-Wait 2d, NY Prac § 63:215), it would appear that the full and fair opportunity doctrine of Schwartz [24 NY2d 65 (1969)] requires the court to consider the existence of an appeal before determining the forfeiture.” (Matter of Brown, 132 Misc 2d 171, 172-173 [1986].)
The court went on to direct that the funds be held in escrow pending finalization of the judgment of murder.
In Matter of Dorsey (161 Misc 2d 258 [1994]), however, the court reached a different result. The presumed distributee, after being convicted after trial of the murders of his parents, proceeded to file an appeal of the convictions. Prior to final determination of the appeal, a proceeding was brought to determine the effect of the son’s conviction on his distribution rights under his parents’ wills. Initially, the court decided to await the outcome of the appeal before making its determina *384 tion. After, however, being advised that the appeal had been pending for approximately three years without a date for argument having been scheduled, the court decided to proceed to adjudication on the son’s disqualification.
In the instant case, the time for the decedent’s spouse to perfect his appeal has expired. The court is mindful, however, that an application to extend the time to perfect the appeal may be made (CPL 460.70). Given the filing of a notice of appeal, the court denied petitioner’s previous application to dispense with the appointment of a guardian ad litem and, instead, appointed a guardian ad litem solely for the purpose of reporting to the court on the status of the appeal.
Since the appeal has not been perfected despite the notice of appeal having been filed over 17 months ago and given the correspondence received from the decedent’s spouse and the comments of the guardian ad litem, the court finds that no disqualification hearing is necessary. Based upon his conviction for the second degree murder of the decedent, the decedent’s spouse is disqualified as a distributee of the decedent’s estate. Accordingly, letters of administration shall issue to petitioner.