OPINION OF THE COURT
Anthony A. Scarpino, Jr., S.
*649 In this miscellaneous proceeding, petitioner, the mother of Aaliyah Wigfall (decedent) and the administratrix of her estate, seeks the court’s permission to settle and compromise the causes of action arising out of decedent’s death, as well as related relief, including: (i) the court’s approval of her rejection of a Medicaid lien against the settlement proceeds filed by Human Resources Administration — City of New York (HRA); and (ii) pursuant to EPTL 4-1.4, the disqualification of the estate of Keith Wigfall, decedent’s postdeceased biological father, as an intestate distributee of the net settlement proceeds. The application is granted, in all respects, for the reasons set forth, infra.
According to petitioner, decedent died on February 10, 2007 at age six, as a result of injuries she sustained from a single-vehicle accident which occurred May 16, 2004. More specifically: (i) decedent was a passenger in an automobile owned by a third party and driven by Wigfall, who had failed to properly secure decedent in a child safety seat or otherwise properly secure her in the vehicle with a safety belt; (ii) the accident occurred as a result of Wigfall falling asleep while driving the vehicle; and (iii) as a result of the accident, decedent incurred severe head injuries and significant brain damage, which caused her to remain in a comatose and vegetative state until her death.
In the interim, in November 2005, petitioner, on decedent’s behalf, and two other passengers injured as a result of the accident commenced tort actions against Wigfall, who died in October 2007. Petitioner has decided to resolve the estate’s tort action against Wigfall for the sum of $33,333.33, or one third of the vehicle owner’s available insurance coverage, and allocate the settlement proceeds entirely to the cause of action for conscious pain and suffering.
Upon her commencement of the instant proceeding, petitioner duly served a citation upon: (i) the New York State Department of Taxation and Finance; (ii) HRA; and (iii) Richard Wigfall, Sr. — Wigfall’s father and the sole intestate distributee of Wig-fall’s estate. While the Department of Taxation and Finance has submitted a waiver and consent, neither HRA nor Wigfall’s father has appeared or filed an answer in this proceeding, thereby defaulting herein.
In light of the facts and circumstances surrounding the accident, sufficient reason appearing therefor, the court hereby approves of the proposed settlement sum. Counsel fees and disbursements are hereby fixed and approved in the sums of $10,530.42 and $1,742.05, respectively, as requested.
*650 As to petitioner’s prayer to have the court approve of her rejection of HRA’s Medicaid lien, petitioner alleges in the petition and counsel’s affirmation in support thereof, that: (i) HRA has asserted a lien of $485,429 for Medicaid resources provided to decedent from May 16, 2004 through February 12, 2007; and (ii) none of the gross settlement proceeds represent reimbursement for past medical expenses. Since HRA has defaulted herein, the foregoing allegations are deemed “due proof’ of the facts stated therein (SCPA 509). Accordingly, as none of the subject settlement proceeds represent reimbursement for actual medical costs decedent received prior to her death (see 42 USC § 1396p [a]), the court hereby approves of petitioner’s rejection of the payment of any portion of HRA’s Medicaid lien from the net settlement proceeds (see Arkansas Dept. of Health & Human Servs. v Ahlborn, 547 US 268 [2006]).
As to petitioner’s prayer to disqualify Wigfall as an intestate distributee of decedent’s estate, in her petition, counsel’s affirmation and supplemental affirmation and her own supplemental affidavit, petitioner: (i) cites the common-law rule set forth in Riggs v Palmer (115 NY 506 [1889]), since Wigfall’s actions caused decedent’s death; (ii) contends that Wigfall’s failure to properly secure decedent in the vehicle constituted “neglect” under the applicable provisions of Family Court Act article 10, and amounts to “abandonment” and/or “failure to provide” for decedent as contemplated by EPTL 4-1.4; and (iii) relies on her undisputed allegations that Wigfall failed to visit or provide any financial support for decedent during her lifetime as adequate grounds for disqualification of Wigfall under EPTL 4-1.4.
Initially, the court finds that petitioner’s reliance on Riggs v Palmer (supra) in the instant case is misplaced. In Riggs, the Court of Appeals articulated the long-accepted principle that “[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime” (Riggs v Palmer at 511). This maxim is generally applied in cases where one intentionally murders another person or causes the death of another person by some felonious or other intentional or reckless criminal conduct and, as a result, is not entitled to share in the estate of the victim (see e.g. Matter of Alexis, 14 Misc 3d 379, 381 [2006] [and cases cited]). However, the application of the foregoing principle is not always straightforward, and not all wrongful conduct will disqualify a person as a distributee (see Matter of Alexis, supra). In the instant case, *651 there is no indication of a criminal conviction or plea by Wigfall attendant to his conduct, and no allegation that any criminal charges were ever brought against Wigfall in connection with the subject accident. In fact, petitioner alleges that Wigfall was cited for violating Vehicle and Traffic Law § 1229-c (1) for his failure to adequately secure decedent in a child safety seat — an offense punishable solely by a civil fine not to exceed $100 (see Vehicle and Traffic Law § 1229-c [5]). Thus, the age-old principle set forth in Riggs is inapplicable in the instant case (see Guilmette v Ritayik, 39 AD2d 339, 342 n 2 [1972] [a surviving distributee of an automobile accident victim is not precluded from recovering damages in a wrongful death action emanating from the subject accident where the distributee’s negligence in causing the accident contributed to the victim’s death; as a matter of public policy, Riggs might have applied if the conduct complained of were criminal in nature rather than mere civil negligence]).
As to the application of EPTL 4-1.4 herein, effective January 1, 2007, the Legislature repealed EPTL former 4-1.4 and enacted the current version thereof, which includes, among other provisions, subdivision (a) (1) and (2) (L 2006, ch 285, §1).
In the foregoing respect, EPTL 4-1.4 (a) (1) provides, in pertinent part:
“(a) No distributive share in the estate of a deceased child shall be allowed to a parent if the parent, while such child is under the age of [21] years:
“(1) has failed or refused to provide for the child or has abandoned such child, whether or not such child dies before having attained the age of [21] years, unless the parental relationship and duties are subsequently resumed and continue until the death of the child . . . .”
Thus, as was the case under EPTL former 4-1.4 (a), disqualification of a parent pursuant to EPTL 4-1.4 (a) (1) is premised on either of two criteria: (i) failure or refusal to support the child; or (ii) abandonment of the child (Matter of Gonzalez, 196 Misc 2d 984, 987 [2003]). Since these criteria are separate and distinct, proof of either will cause the parent to be disqualified (Matter of Baecher, 198 AD2d 221 [1993]; Matter of Lascelle, 68 NYS2d 70 [1947]). The burden of proof is on the party asserting either or both grounds for disqualification (see Matter of Clark, 119 AD2d 947 [1986]; see generally Matter of Emiro, 5 Misc 3d 1002[A], 2004 NY Slip Op 51149[U] [2004]).
*652 More specifically, as to allegations of failure to support, as was the case under EPTL former 4-1.4 (a), EPTL 4-1.4 (a) (1) imposes the equitable penalty of disinheritance upon a parent who has failed to fulfill his/her statutory obligation under Family Court Act § 413 to provide, based upon his/her means, a fair and reasonable sum for the support of his/her children (see e.g. Estate of Maracallo, NYLJ, May 12, 1999, at 32, col 1 [Sur Ct, Bronx County]). In this respect, a party seeking disqualification needs to show that the failure to support the child was a voluntary or deliberate act of the parent (Matter of Musczak, 196 Misc 364 [1949]; Matter of Schriffrin, 152 Misc 33 [1934]), or was a “disinclination” on the parent’s part (Matter of Zounek, 143 Misc 827 [1932]). Also, allegations of abandonment must amount to a voluntary breach or neglect of the duty to care for and train a child and the duty to supervise and guide the child’s growth and development (see EPTL former 4-1.4 [a]; Matter of Musczak, 196 Misc 364, 365-366 [1949]; Matter of Herbster, 121 NYS2d 360, 361 [1953]; Estate of Channon, NYLJ, Apr. 17, 1991, at 26, col 1).
Additionally, EPTL 4-1.4 (a) (2) provides that any parent whose parental rights have been terminated or, in some cases, suspended pending judgment under Social Services Law § 384-c is disqualified from receiving an intestate share of his/her child’s estate. According to the legislative memorandum in support of the bill, the addition of subdivision (a) (2) to the revised EPTL 4-1.4 was proposed to prevent an abusive parent who was the subject of a child protective proceeding from sharing in the intestate share of his/her child’s estate {see Senate Introducer Mem in Support, Bill Jacket, L 2006, ch 285).
In contending that EPTL 4-1.4 serves to disqualify Wigfall solely on the basis of his conduct in causing the accident which resulted in decedent’s fatal injuries and in failing to properly secure decedent in the vehicle immediately prior to the accident, petitioner relies on Mark G. v Sabol (180 Misc 2d 855, 856 [1999]). In Sabol, citing Family Court Act § 1012 (e) (i) (i.e., definition of “abused child”) and (f) (i) (B) (i.e., definition of “neglected child”), the court found that a deceased’s child’s mother, who pleaded guilty to second degree assault for perpetrating acts of physical abuse upon the child which contributed to the child’s death, had, in essence, failed or refused to provide for the child, and, thus, was barred under EPTL former 4-1.4 (a) from inheriting from the child’s estate as an intestate distributee. In doing so, the court cautioned that “[w]hile [that] sitúa *653 tion may not be exactly what the drafters had in mind (to say the least), it clearly fits within the ambit of [EPTL former 4-1.4 (a)] in wording and spirit,” and applied EPTL former 4-1.4 (a) “as a matter of case and statutory law, morality and common sense” (Sabol at 860).
In the instant case, the court acknowledges that, as in Sabol, the circumstances surrounding decedent’s death are, indeed, tragic. Nevertheless, upon review of the foregoing authorities, the court finds that Wigfall’s negligent acts in failing to properly secure decedent in a child safety seat and in falling asleep at the wheel do not warrant the disqualification of Wigfall as decedent’s distributee, as those acts neither amount to a failure to support and/or abandonment of decedent under EPTL 4-1.4 (a) (1) nor do they comprise actions contemplated by the addition of EPTL 4-1.4 (a) (2). In the latter respect, the 2007 addition of EPTL 4-1.4 (a) (2) mandates disqualification only where a parent has been provided the opportunity to be heard in a Family Court proceeding or has defaulted therein, and that court has terminated his/her rights based on a finding of abuse and/or neglect in accordance with applicable statutes. Under the facts and circumstances herein, this court is not prepared to expand the scope of EPTL 4-1.4 (a) (1) and/or (2) in the manner suggested by petitioner, as such review and/or execution is best left for the Legislature.
However, since petitioner’s allegations that Wigfall never made any effort to be a “regular part” of decedent’s life and never provided any financial support for decedent’s benefit have not been contested by Richard Wigfall, Sr. — Wigfall’s father and the sole intestate distributee of Wigfall’s estate — those allegations are deemed “due proof of the facts therein stated” (SCPA 509). Under the aforementioned authorities, the court determines that those undisputed allegations are sufficient to establish petitioner’s prima facie showing of Wigfall’s abandonment and/or failure to support decedent, and constitute sufficient grounds for Wigfall’s disqualification as decedent’s intestate distributee pursuant to EPTL 4-1.4 (a) (1).
Accordingly, pursuant to EPTL 4-1.1 (a) (4), distribution and allocation of the net settlement proceeds of $21,060.86 shall be made to petitioner, as administratrix of decedent’s estate, for distribution to herself, as decedent’s sole distributee.